IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| HEALTHMATE INTERNATIONAL, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 15-0761-CV-W-BP |
| | ) |
| TIMOTHY W.T. FRENCH, and | ) |
| RAMPANT LION LLC, | ) |
| | ) |
| Defendants. | ) |

**ORDER AND OPINION (1) GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND (2) DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Plaintiff Healthmate International, LLC initiated this suit, asserting three claims of copyright infringement against Defendants Timothy French and Rampant Lion LLC.[1] Rampant Lion has asserted counterclaims for false advertising under the Lanham Act, tortious interference with contract or business expectancy, and unfair competition. Now pending are cross-motions for summary judgment. Plaintiff seeks summary judgment on all of the claims in the case, and Defendants seek summary judgment on Plaintiff's copyright infringement claims and on Rampant Lion's counterclaim under the Lanham Act. For the following reasons, (1) Plaintiff's motion, (Doc. 160), is **GRANTED** to the extent that it seeks summary judgment on Rampant Lion's Lanham Act claim and **DENIED** in all other respects, and (2) Defendants' motion, (Doc. Doc. 162), is **DENIED** in its entirety.

---

[1] Defendants correctly contend that French's liability is not established merely by establishing that Rampant Lion infringed on Plaintiff's copyrights, and at some point Plaintiff will have to separately establish the basis for each Defendants' liability. (Doc. 164, p. 109 n.3.) In the meantime, in the interest of clarity the Court will refer to the Defendants collectively unless the context clearly dictates otherwise.

A moving party is entitled to summary judgment on a claim only upon a showing that "there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." *See generally Williams v. City of St. Louis*, 783 F.2d 114, 115 (8th Cir. 1986). "[W]hile the materiality determination rests on the substantive law, it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Thus, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Wierman v. Casey's Gen. Stores*, 638 F.3d 984, 993 (8th Cir. 2011) (quotation omitted). In applying this standard, the Court must view the evidence in the light most favorable to the non-moving party, giving that party the benefit of all inferences that may be reasonably drawn from the evidence. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986); *Tyler v. Harper*, 744 F.2d 653, 655 (8th Cir. 1984), *cert. denied*, 470 U.S. 1057 (1985). A party opposing a motion for summary judgment may not simply deny the allegations, but must point to evidence in the Record demonstrating the existence of a factual dispute. Fed. R. Civ. P. 56(c)(1); *Conseco Life Ins. Co. v. Williams*, 620 F.3d 902, 909-10 (8th Cir. 2010).

For ease of discussion, the Court will discuss the background relevant to the Court's decision on a count-by-count basis. In light of the Court's rulings an abbreviated statement of the facts is all that is necessary. All citations to documents filed with the Court will utilize the page numbers generated by the Court's CM/ECF system.

## I. PLAINTIFF'S CLAIMS FOR COPYRIGHT INFRINGEMENT

### A. Background

Plaintiff and Defendants are in the business of selling TENS units. "TENS" stands for Transcutaneous Electrical Nerve Stimulation, and generally speaking TENS units administer electrical current to portions of the body in order to relieve pain. Plaintiff has a Certificate of Registration for three copyrights for graphical displays used on TENS units it sells. All three displays[2] contain a series of picture-based icons that symbolize the TENS unit's various functions and a battery-shaped icon with hashmarks meant to symbolize the amount of energy remaining in the TENS unit. Some of the displays also include icons that represent parts of the body, a clock or timer, or an "intensity" meter (a bar with hashmarks intended to indicate the current's intensity). The Complaint alleges that that Defendants infringed on all three copyrights by copying them for use on their TENS units.

Defendants argue that they are entitled to summary judgment because Plaintiff's copyrights are invalid. Plaintiff insists that its copyrights are valid and contends that it is entitled to summary judgment because the uncontroverted facts demonstrate that Defendants infringed its three copyrights. For ease of discussion, the Court addresses Defendants' arguments for summary judgment first.

### B. Discussion

#### *1. Defendants' Arguments That the Copyrights Are Invalid*

Plaintiff's Certificates of Registration are prima facie evidence that the copyrights are valid, 17 U.S.C. § 410(c), but the presumption may be rebutted. *E.g., Taylor Corp. v. Four*

---

[2] Examples of the displays can be found in the Record at Doc. 161-2, Doc. 161-6, and Doc. 161-10. The Court acknowledges Defendants' objection to Doc. 161-6, (*see* Doc. 165, p. 7), but the Court does not believe the objection is meritorious. Regardless, the Court's ruling would not change even if the Court agreed that Doc. 161-6 cannot be considered.

*Seasons Greetings, LLC,* 315 F.3d 1039, 1042 (8th Cir. 2003). Defendants attempt to rebut this presumption by arguing that the material Plaintiff claims to have copyrighted (1) is an uncopyrightable "method of operation" or (2) is not original. As discussed below, the Court concludes that Defendants are not entitled to summary judgment on these theories.

### *(a) "Method of Operation"*

Copyright protection may be obtained for "original works of authorship," which are defined to include "pictorial" and "graphic" works. 17 U.S.C. § 102(a). However, "[i]n no case does copyright protection . . . extend to any idea, procedure, process, system, method of operation, concept, principle, or discovery . . . ." *Id*. § 102(b). Defendants argue that Plaintiff has attempted to copyright a "method of operation" and rely exclusively on the First Circuit's decision in *Lotus Development Corp. v. Borland International, Inc.* 49 F.3d. 707 (1st Cir. 1995), *aff'd,* 516 U.S. 233 (1996),[3] to support their point. Plaintiff argues that *Lotus Development* does not apply in this case. The Court agrees with Plaintiff.

As a whole, § 102(b) addresses the difference between an idea and the particular expression of that idea: the former is not copyrightable, but the latter is. *See Toro v. R&R Products Co.,* 787 F.2d 1208, 1211-12 (8th Cir. 1986). Thus, in the earliest case addressing this distinction, it was held that the "idea" of a particular method of accounting cannot be copyrighted, while a book describing how to utilize that accounting method can be copyrighted. *Baker v. Selden,* 101 U.S. 99, 100-01 (1880). Recognizing the distinction allows others to produce original works discussing the idea and accounts for the "weaker" protection offered to copyrights (as compared to patents). In codifying this concept in § 102(b), Congress did not clearly delineate between the listed categories of uncopyrightable material, Nimmer on

---

[3] The First Circuit's decision was affirmed by an equally divided Supreme Court, so there is no reported opinion from the Supreme Court.

Copyright § 2.06[A][3] (2017), and some courts do not find it necessary to distinguish among them. *E.g., Gates Rubber Co. v. Bando Chem. Indus.,* 9 F.3d 823, 836 n.13 (10th Cir. 1993). Nonetheless, Defendants focus on § 102(b)'s exclusion of "methods of operation," which has been described as applying most readily to "instruction manuals or other directions for use [which are] ineligible for copyright even though the precise textual expression of the manuals or directions might qualify for protection." Nimmer, § 2A.06[A][3][b]. Thus, for instance, one could not copyright the method for driving a car (and thereby prevent others from producing their own manuals for doing so), although one could copyright a specific treatise explaining how to drive a car.

*Lotus Development* involved Lotus 1-2-3, a spreadsheet program that utilized a series of menus and commands to perform functions such as "copy," "print," and "quit."[4] Lotus 1-2-3 was so popular that its menus and commands became second nature to users. In 1987, a competitor (Borland) released a competing spreadsheet program that provided users with an "alternate user interface" that allowed users to

> see the Lotus menu commands on their screens and . . . interact with Quattro or Quattro Pro as if using Lotus 1–2–3, albeit with a slightly different looking screen and with many Borland options not available on Lotus 1–2–3. In effect, Borland allowed users to choose how they wanted to communicate with Borland's spreadsheet programs: either by using menu commands designed by Borland, or by using the commands and command structure used in Lotus 1–2–3 augmented by Borland-added commands.

49 F.3d at 810. Lotus filed suit, contending the menus and commands for Lotus 1-2-3 were copyrighted and that Borland infringed on that copyright by providing users of its competing product the ability to utilize the same menus and commands.

---

[4] Examples that are familiar to computer users today – and that may have been at issue in *Lotus Development* – are (1) the command sequence of pressing the "CONTROL" and "P" buttons in order to display a menu of print commands and (2) pressing the designated/underlined letter in a word to execute a command, such as pressing the keyboard's "P" button when one of the menu options is "<u>P</u>rint."

5

The First Circuit held that the menus and commands were not copyrightable because they were the method of operating Lotus 1-2-3, explaining that methods of operation "are the means by which a user operates something. If specific words are essential to operating something, then they are part of a 'method of operation' and, as such, are unprotectable. This is so whether [the words] must be highlighted, typed in, or even spoken . . . ." *Id*. at 816. The court then compared Lotus 1-2-3's "direction" to push certain buttons on the keyboard to the buttons on a VCR and determined that Lotus's "command terms are not equivalent to the labels on the VCR's buttons, but are instead equivalent to the buttons themselves." *Id.* at 817. The court further contrasted the computer commands from the labels on a VCR's buttons, explaining that "[u]nlike the labels on a VCR's buttons, which merely make operating a VCR easier by indicating the buttons' functions, the Lotus menu commands are essential to operating Lotus 1-2-3. Without the menu commands, there would be no way to 'push' the Lotus buttons, [but] one could push unlabeled VCR buttons." *Id*. In other words, "CTRL+P" is literally the "button" that operates the program – and the button cannot be copyrighted.

Even if *Lotus Development* provides the proper analytical framework for identifying a "method of operation,"[5] it does not entitle Defendants to judgment as a matter of law. Plaintiff's copyright covers the pictures it has placed on the TENS units' "buttons," not the buttons themselves.[6] Plaintiff's icons are thus like "the labels on a VCR's buttons" that *Lotus*

---

[5] *Lotus Development* has not been adopted by the Eighth Circuit, which is significant because it has been rejected by many others. *See Oracle Am., Inc. v. Google Inc.,* 750 F.3d 1339, 1366 (Fed. Cir. 2014) (concluding discussion of decisions from other circuits by observing that "[n]otably, no other circuit has adopted the First Circuit's 'method of operation' analysis.")

[6] Plaintiff goes further, contending that it has a copyright not only on the individual icons/pictures, but also "the overall screen layout, the design of the battery and intensity graphs, the design of the timer icons, and the various border and line styles used throughout the screen." (Doc. 164, p. 46.) In their Reply Suggestions, Defendants contend that some of these components (such as the battery icon, timer, and intensity graphs) are so common that they are not copyrightable. (Doc. 167, pp. 53-55.) The Court is inclined to agree, but is disinclined to consider the issue because it was raised for the first time in Defendants' Reply Suggestions. Moreover, it is not necessary to

*Development* described as copyrightable. The pictures are placed on the method of operation – the buttons. They are not themselves the method of operating the TENS units, and they are not transformed into the method of operation just because they are physically placed on the buttons (instead of being placed above or below them). Therefore, the pictures are copyrightable.

### *(b) "Original Work"*

To qualify for copyright protection, a work must be original. 17 U.S.C. § 102(a). This

> means only that the work was independently created by the author (as opposed to copied from other works), and that it possesses at least some minimal degree of creativity. . . . The vast majority of works make the grade quite easily, as they possess some creative spark, no matter how crude, humble or obvious it might be. Originality does not signify novelty; a work may be original even though it closely resembles other works so long as the similarity is fortuitous, not the result of copying.

*Feist Publications, Inc. v. Rural Tel. Serv. Co.,* 499 U.S. 340, 345 (1991) (quotations omitted). Whether a work is "original" within the meaning of § 102(a) depends, at least in part, on facts about the work's creation. *E.g., Home Legend, LLC v. Mannington Mills, Inc.,* 784 F.3d 1404, 1409 (11th Cir. 2015) (originality is a question of fact); *Los Angeles News Serv. v. Tullo,* 873 F.2d 791, 793 (9th Cir. 1992) (originality is a mixed question of fact and law).

Defendants contend that Plaintiff (or more precisely, Shawn Chen, the son of Plaintiff's owner) copied the icons from a competitor, so the icons that Plaintiff claims to have copyrighted are not original. However, there is evidence in the Record (primarily from Chen's deposition) that indicates otherwise. Therefore, the Record does not conclusively establish that the material is not original and the Court cannot grant summary judgment on this basis.

---

address this issue because the Court concludes that, at a minimum, the icons/pictures Plaintiff uses to depict the TENS units' functions are copyrightable. Defendants' argument that the display includes non-copyrightable components can be addressed at trial and resolved through appropriate jury instructions that focus the jury on the copyrightable components.

### *2. Plaintiff's Arguments Regarding Infringement*

To establish infringement, Plaintiff must demonstrate that it owned a copyright on material that was copied by Defendants. "[C]opying can be established by demonstration of access (by the alleged infringer) and substantial similarity (between the works at issue)." *Moore v. Columbia Pictures Indus., Inc.,* 972 F.2d 939, 941-42 (8th Cir. 1992). In this case, factual disputes prevent the Court from determining that these requirements have been met, so the issue must be resolved by a jury.

### C. Conclusion

The Court holds that Plaintiff's copyrights are not invalid attempts to protect methods of operating its TENS units. The Record does not establish that the copyrights are invalid because they attempt to protect unoriginal material. Similarly, the Record does not conclusively establish that Defendants violated the copyrights. For these reasons, both sides' requests for summary judgment are denied.

## II. RAMPANT LION'S LANHAM ACT COUNTERCLAIM

### A. Background

The parties agree to the following facts (and some of these "facts" are actually legal matters). There are a great many other facts discussed in connection with the Lanham Act claim, but these are the only facts necessary to resolve the issues discussed in Part II(B), below.

Plaintiff operates a website through which it sells its products. Some of the product descriptions indicated that the products in question were "FDA approved."[7] "However, to the FDA, 'approved' technically means that each individual device is inspected, like the USDA inspects all meat sold in the United States, which they [Plaintiff's products] are not." (Doc. 165,

---

[7] The parties have argued about the extent to which Plaintiff's website says "FDA approved" as opposed to "FDA Approved," as well as the potential significance of having the word "approved" capitalized. In light of the Court's holding there is no need to delve into this issue.

p. 28, ¶ 47 (Plaintiff's statement of fact agreed to by Defendants); *see also* Doc. 163-9, p. 4.) In contrast, a product that is "FDA cleared" means (to the FDA and others who know the technical meaning to be attached to the phrase) that the product in question is substantially similar to another device that is already legally marketed for the same use.

Given the technical meanings accorded to the phrases, Plaintiff's products are "FDA cleared" but not "FDA approved." Thus, it was incorrect to say that Plaintiff's products were FDA approved, at least as that phrase is understood in terms of FDA regulations and procedures. Plaintiff's product descriptions also utilized the phrase "FDA cleared," and some of Plaintiff's product descriptions actually used both phrases. Significantly for purposes of the legal issues to be discussed, Plaintiff's product descriptions do not say anything about Rampant Lion's products.

### B. Discussion

Generally, the Lanham Act provides a cause of action against those who utilize a "false or misleading description, or false or misleading representation of fact" in advertising that "misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities." 15 U.S.C. § 1125(a)(1)(B).[8] The Eighth Circuit has held that there are five elements to a false advertising claim under the Lanham Act:

> (1) a false statement of fact by the defendant in a commercial advertisement about its own or another's product; (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the deception is material, in that it is likely to influence the purchasing decision; (4) the defendant caused its false statement to enter interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct

---

[8] The Lanham Act also prohibits advertising that is "likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person," 15 U.S.C. § 1125(a)(1)(A), but Rampant Lion's counterclaim does not invoke this portion of the Lanham Act. (Doc. 30, ¶¶ 34-35.)

9

diversion of sales from itself to defendant or by a loss of goodwill associated with its products.

*United Indus. Corp. v. Clorox Co.,* 140 F.3d 1175, 1180 (8th Cir. 1998). "In addition, to recover damages a plaintiff must prove both actual damages and a causal link between defendant's violation and those damages." *Id.* (quotation omitted).

The parties present several arguments, but the Court will focus only on those that are necessary to resolve the fate of the Lanham Act Claim. Plaintiff contends that Rampant Lion cannot establish the second element – that customers were or are likely to be deceived – because it does not have customer surveys or other evidence typically used to establish this element. Rampant Lion concedes that it does not have any such evidence, but insists that it is not necessary in this case. The Court agrees with Plaintiff, but its analysis requires it to first ascertain the "type" of misstatement that Plaintiff made when it described its products as FDA Approved.

### *1. The "Type" of Statement at Issue*

As stated above, the first element of a Lanham Act claim requires a false statement. The law recognizes different types of statements, and the type of statement affects how the other elements may be proved. Thus, before considering what kind of evidence is necessary to prove deception (the second element), the Court must first determine what type of misstatement is at issue.

"The false statement necessary to establish a Lanham Act violation generally falls into one of two categories: (1) commercial claims that are literally false as a factual matter; and (2) claims that may be literally true or ambiguous but which implicitly convey a false impression, are misleading in context, or likely to deceive consumers." *United Indus.,* 140 F.3d at 1180. However, some statements are incapable of being false at all because they are insufficiently
10

specific. Such statements are "generally known as 'puffery' or 'puffing.' Puffery is exaggerated advertising, blustering, and boasting upon which no reasonable buyer would rely and is not actionable under" the Lanham Act. *Id.* (quotation omitted). "Nonactionable puffery includes representations of product superiority that are vague or highly subjective. However, false descriptions of specific or absolute characteristics of a product . . . are actionable." *Id.* (citations omitted). Rampant Lion contends Plaintiff's representation that its TENS units were "FDA approved" is literally false. Plaintiff contends the representation was mere puffery or, at worst, an ambiguous statement that was not literally false. As discussed below, the Court concludes the statement was not puffery and was not literally false, but rather was an ambiguous statement that was capable of conveying a false impression.[9]

The representation that the TENS units are "FDA approved" is not mere puffery. "Puffery exists in two general forms: (1) exaggerated statements of bluster or boast upon which no reasonable consumer would rely; and (2) vague or highly subjective claims of product superiority, including bald assertions of superiority." *American Italian Pasta Co. v. New World Pasta Co.,* 371 F.3d 387, 390-91 (8th Cir. 2004). Describing a product as having been approved by the FDA is not merely boasting or exaggeration, nor is it a general claim of superiority. It alleges a specific historical fact: that in some manner the FDA approved the TENS unit. The representation is either true or false[10] and therefore cannot be mere puffery. *See United Indus.,* 140 F.3d at 1180.

---

[9] It is not settled (and the parties do not discuss) whether this is a question of law or fact. *See Buetow v. A.L.S. Enterprises, Inc.,* 650 F.3d 1178, 1186 n.5 (8th Cir. 2011). The issue need not be resolved at this time because there are no factual disputes that affect the Court's analysis.

[10] Plaintiff makes this same point to argue that the statement is puffery, (*e.g.,* Doc. 161, p. 36; Doc. 164, pp. 51-52), but provides no authority to support its argument and does not explain how its representation qualifies as puffery under *American Italian Pasta* or *United Industries Corp.* Plaintiff also suggests the statement is puffery because it "used the term in a way that is common in the industry to boast about the quality and usefulness of its TENS units."

11

The representation is also not literally false. "The standard for proving literal falsity is rigorous. Only an *unambiguous* message can be literally false. When an ad can reasonably be understood as conveying different messages, a literal falsity argument must fail. In assessing whether an advertisement is literally false, a court must analyze the message conveyed within its full context." *See Buetow v. A.L.S. Enterprises, Inc.,* 650 F.3d 1178, 1185 (8th Cir. 2011) (quotations omitted; emphasis in original). Rampant Lion contends the representation that TENS units have been "FDA approved" is literally false because under the FDA's regulations there is a difference between "FDA approved" and "FDA cleared," and the FDA does not regard Plaintiff's TENS units as "FDA approved." There is no doubt that the phrases mean different things to the FDA, but that is not the test for literal falsehood. The question is, as *Buetow* explains, whether the phrase is unambiguously false to consumers, which requires the Court to determine if "the false message will *necessarily* and *unavoidably* be received by the consumer." *Id.* (quotation omitted; emphasis supplied).

The terms "clear" and "approve" have ordinary meanings, and the process necessary for the FDA to "clear" TENS units – the process that actually applied to Plaintiff's TENS units – qualifies under the dictionary definition of "approval"[11] even if there is a regulatory or technical difference between "clearance" and "approval."[12] Considerable context (namely, the FDA regulations) is required to understand why the phrase "FDA approved" was inaccurate, so the

---

(Doc. 161, p. 35.) Even if this fact is true, Plaintiff provides no authority establishing that a false statement of fact is transformed into puffery just because others in the industry make the same false statement.

[11] For instance, the online version of the Merriam-Webster dictionary defines "approve" to mean "to have or express a favorable opinion of" or "to accept as satisfactory." (https://www.merriam-webster.com/dictionary/approve (last visited May 22, 2017.)

[12] The fact that the FDA engaged in review of any kind differentiates this case from those cited in Rampant Lion's Reply Suggestions, (Doc. 167, p. 60), which involve claims of governmental approval when there was no governmental review whatsoever. *E.g., Fringe Ins. Benefits, Inc. v. Beneco, Inc.,* 2015 WL 631181, at *3 (W.D. Tex. 2015) ("Beneco's statements that its plan was Department of Labor approved were literally false. The plan was not approved or endorsed by the Department of Labor in any way.").

12

false impression will not be necessarily and unavoidably received by consumers. Therefore, the representation Plaintiff's TENS units were "FDA approved" is not a literal falsehood.[13]

### 2. Deception

The second element of a Lanham Act claim requires Rampant Lion to prove that a substantial segment of the buying public was or could be deceived by Plaintiff's claim that its TENS units were FDA approved. The Court's determination that the statement is not a literal falsehood affects the manner in which Rampant Lion must prove this element.

"If a plaintiff proves that a challenged claim is literally false, a court may grant relief without considering whether the buying public was actually misled; actual consumer confusion need not be proved." *United Indus. Corp.*, 140 F.3d at 1180. But, if "a commercial claim is not literally false but is misleading in context, proof that the advertising actually conveyed the implied message and thereby deceived a significant portion of the recipients becomes critical." *Id.* at 1182. The need to demonstrate that a significant portion of consumers has been or could be deceived requires more than a showing that one or a few consumers are deceived, so proof of this element takes the form of consumer surveys. *Id.*; *see also Blue Dane Simmental Corp. v. American Simmental Ass'n,* 178 F.3d 1035, 1043 (8th Cir. 1999); *Rainbow Play Sys., Inc. v. GroundScape Techs., LLC.,* 364 F. Supp. 2d 1026, 1032 (D. Minn. 2005).

Rampant Lion concedes that it does not have the surveys necessary to prove this element; instead, it contends that it does not need surveys.[14] On this point Rampant Lion relies primarily

---

[13] The Court does not apply the law of the case doctrine to reach this result as invited by Plaintiff, (Doc. 164, p. 51), because the Court has previously discussed the Lanham Act in the context of discovery disputes and has not resolved this particular issue.

[14] While conceding it has no surveys, Rampant Lion also points to a sentence from French's deposition testimony to establish that consumers have been deceived. (*E.g.,* Doc. 163, p. 26.) When asked if he was "aware of any customer that purchased a Healthmate product over [Rampant Lion's] product because it said FDA approved," French testified: "It happens all the time in Hawaii." (Doc. 163-14, p. 5.) This is not a survey. Moreover, it is not competent evidence that can be considered to establish why consumers have or have not purchased particular

13

on its arguments that Plaintiff's misrepresentation is literally false – but, the Court has rejected this theory.

Rampant Lion also suggests in passing that Plaintiff's bad faith or willfulness can excuse the need to prove actual or potential deception. (Doc. 163, p. 24.) This argument would be rejected even if it were squarely presented because, given the nature of Rampant Lion's Lanham Act claim, bad faith and willfulness cannot substitute for a showing of actual or potential deception. Willfulness gives rise to a presumption of deception only in Lanham Act cases where false comparative advertising is alleged. *Porous Media Corp. v. Pall Corp.,* 110 F.3d 1329, 1334-35 (8th Cir. 1997). A claim of false comparative advertising is predicated on two types of claims, both of which involve or imply a comparison between products, such as "our product is better than theirs." *E.g., EFCO Corp. v. Symons Corp.,* 219 F.3d 734, 739-40 (8th Cir. 2000); *United Indus.,* 140 F.3d at 1181-82; *see also Merck Eprova AG v. Gnosis S.p.A.,* 760 F.3d 247, 259-61 (2d Cir. 2014) (discussing need to limit circumstances in which proof of deception can be excused). "An important distinction must be drawn between cases applying the general rule, that causation and injury must be proved, and cases of false advertising where the plaintiff-competitor's product is specifically compared or referenced." *Porous Media,* 110 F.3d at 1335 (quotation omitted); *see also McNeilab, Inc. v. American Home Prod. Corp.,* 848 F.2d 34, 38 (2d Cir. 1988). Here, Rampant Lion has not presented a comparative advertising claim, and Plaintiff's website does not compare its TENS units to Rampant Lion's. Therefore, any willfulness on Plaintiff's part would not obviate Rampant Lion's obligation to prove actual or potential deception.

---

products, and only competent evidence can be considered under Rule 56. *E.g., Brooks v. Tri-Systems, Inc.,* 425 F.3d 1109, 1111 (8th Cir. 2005); *Mays v. Rhodes,* 255 F.3d 644, 648 (8th Cir. 2001).

### C. Conclusion

Plaintiff's statements that its TENS units are "FDA approved" are not literally false or mere puffery. Therefore, to prevail on its Lanham Act claim Rampant Lion must prove that the statements have actually deceived, or are capable of deceiving, consumers. Plaintiff concedes that it does not have any such evidence, so summary judgment is granted to Plaintiff on this claim.

### III. RAMPANT LION'S TORTIOUS INTERFERENCE AND UNFAIR COMPETITION COUNTERCLAIMS

Plaintiff seeks summary judgment on Rampant Lion's second and third counterclaims, contending that Rampant Lion has no evidence to support its claims. (Doc. 161, pp. 40-42.) This argument is insufficient. To obtain summary judgment, the moving party must "show[ ] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Plaintiff has not identified the absence of undisputed facts; instead, it has simply declared that Rampant Lion has no facts and thereby attempts to shift the initial burden and make Rampant Lion come forth with facts supporting its claims. The nonmoving party's obligation does not arise unless the moving party first identifies undisputed facts entitling it to judgment as a matter of law.[15] Plaintiff did not do this, so it has not demonstrated it is entitled to summary judgment.[16]

---

[15] Plaintiff's request for summary judgment on Rampant Lion's Lanhman Act claim was treated differently by the Court for a variety of reasons, including Rampant Lion's concession that it lacked evidence of actual or likely deception.

[16] Plaintiff's argument that "none of the activities alleged by Defendants took place in Missouri [so] there is no claim under Missouri law," (Doc. 161, p. 42; *see also* Doc. 166, p. 20), is insufficiently developed to allow for evaluation by the Court. Moreover, this argument only raises choice of law issues; even if Plaintiff is correct it would only mean that Rampant Lion's tort claims are governed by Hawaii law, which does not necessarily mean that Plaintiff is entitled to judgment.

## IV. CONCLUSION

Plaintiff's Motion for Summary Judgment is granted in part and Defendants' Motion for Summary Judgment is denied. The Court grants summary judgment to Plaintiff on Rampant Lion's counterclaim under the Lanham Act. The motions are denied in all other respects.

IT IS SO ORDERED.

DATE:  June 1, 2017

/s/ Beth Phillips
BETH PHILLIPS, JUDGE
UNITED STATES DISTRICT COURT